**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | | |
|---|---|---|
| ACOUSTIC VISION LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>ESSILORLUXOTTICA SA AND LUXOTTICA OF AMERICA INC.,<br><br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. [__]<br><br>Jury Trial Demanded |

**PLAINTIFF'S COMPLAINT**

Plaintiff Acoustic Vision LLC ("Acoustic Vision") files this suit against Defendants EssilorLuxottica SA and Luxottica of America Inc. (collectively, "Luxottica") for patent infringement and alleges, with personal knowledge as to its own actions and on information and belief as to the actions of others, as follows:

**THE PARTIES**

1. Plaintiff Acoustic Vision LLC ("Acoustic Vision") is a Texas limited liability company with its principal place of business at 1210 Tate Lane Argyle, Texas 76226.

2. Defendant EssilorLuxottica SA ("EssilorLuxottica") is a corporation organized under the laws of France with its principal place of business at 147 rue de Paris, 94220 Charenton-le-Pont, France. EssilorLuxottica SA owns Defendant Luxottica of America Inc.

3. Defendant Luxottica of America Inc. ("Luxottica of America") is an Ohio corporation with its principal place of business at 4000 Luxottica Place, Mason, Ohio 45040. Defendant Luxottica of America Inc. sells and offers to sell products and services throughout

Texas, including in this judicial district, and introduces products and services that practice the patent-in-suit into the stream of commerce knowing that they would be sold in Texas and this judicial district. Luxottica of America may be served through its Texas registered agent, National Registered Agents, Inc., 1999 Bryan Street, Suite 900, Dallas, Texas 75201.[1]

## JURISDICTION & VENUE

4. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a) because it arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

5. Luxottica is subject to this Court's personal jurisdiction consistent with the principles of due process and/or the Texas Long-Arm Statute. Tex. Civ. Prac. & Rem. Code §§ 17.041, *et seq.*

6. This Court also has personal jurisdiction over Luxottica because Luxottica has committed acts of patent infringement in this District and throughout Texas, including making, using, selling, offering for sale, and/or importing products that infringe Acoustic Vision's U.S. Patent No. 9,980,054.

7. This Court also has personal jurisdiction over Luxottica because Luxottica has placed infringing products into the stream of commerce, with the expectation they will be purchased and used by customers in Texas and in this District, such that customers in Texas and in this District have purchased and used, and continue to purchase and use, Luxottica's infringing products, which has allowed Luxottica to derive substantial benefits from infringing acts in Texas and in this District.

---

[1] *See ActiveMap LLC v. Luxottica of America Inc.*, No. 2:26-cv-165-RWS, Dkt. 1 ¶ 2 (E.D. Tex. Feb. 27, 2026) (alleging state of incorporation, principal place of business, and registered agent); *id.*, Dkt. 10 ¶ 2 (E.D. Tex. May 8, 2026) (admitting the same).

8. Luxottica of America has not contested personal jurisdiction in this District in prior patent infringement litigation.[2]

9. Venue is proper in this District as to EssilorLuxottica under 28 U.S.C. § 1391(c)(3) because EssilorLuxottica is a foreign corporation that is not a resident of the United States and may be sued in any judicial district. Venue is also proper because EssilorLuxottica is subject to the personal jurisdiction of this Court, as set forth above, and has committed patent infringement in this District.

10. Venue is proper in this District as to Luxottica of America under 28 U.S.C. § 1400(b) because Luxottica of America has committed acts of infringement in this District and has regular and established places of business in this District, including, among other places, the LensCrafters stores located at 2601 Preston Road, Suite 2124, Frisco, Texas 75034 and 6121 W. Park Boulevard, Plano, Texas 75093, each of which is located in this District. Luxottica of America is the successor in interest to LensCrafters, Inc. and operates LensCrafters retail stores in the United States.[3] Luxottica of America owns or leases these locations, staffs them with its own employees, and from them displays, demonstrates, offers for sale, and sells the Accused Products to customers in this District. Luxottica of America also maintains a place of business in this District at the Pearle Vision store located at 5999 Custer Road, Suite 120, Frisco, Texas 75035, and has not contested venue in this District in prior patent infringement litigation in which venue was

---

[2] *See ActiveMap LLC v. Luxottica of America Inc.*, No. 2:26-cv-165-RWS, Dkt. 10 ¶¶ 5–6 (E.D. Tex. May 8, 2026).

[3] *See* Luxottica of America Inc., *Pearle Vision Franchise Disclosure Document*, Item 1, at 1-2 (Mar. 24, 2025), https://storage.googleapis.com/franchiseindx_fdds/Healthcare/Pearle%20Vision_2025_6I7yKBDC (identifying Luxottica of America Inc., f/k/a Luxottica Retail North America Inc., as successor in interest to LensCrafters, Inc.); LensCrafters, *Discover Nuance Audio*, https://www.lenscrafters.com/lc-us/discover-nuance-audio (last visited November 8, 2026).

premised on that location.[4]

11. Defendants EssilorLuxottica and Luxottica of America are properly joined under 35 U.S.C. § 299(a)(1) because Defendants have committed the accused acts of patent infringement jointly, severally, and in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing, selling, and/or offering for sale the same accused Nuance Audio products. In addition, joinder is proper under 35 U.S.C. § 299(a)(1) because questions of fact common to both Defendants will arise in this action.

## THE ASSERTED PATENT

12. On May 22, 2018, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,980,054 (the "'054 Patent" or the "Asserted Patent"), entitled "Stereophonic Focused Hearing." A copy of the '054 Patent is attached as Exhibit A. Acoustic Vision is the sole and exclusive owner of all rights, title, and interest in and to the '054 Patent. By written assignment executed January 7, 2015, Wendell McCracken, the sole named inventor of the '054 Patent, assigned the later-patented invention entitled "Stereophonic Focused Hearing" to Acoustic Vision.

13. To the extent any marking or notice was required by 35 U.S.C. § 287, Acoustic Vision has complied with the applicable marking and/or notice requirements of 35 U.S.C. § 287.

## FACTUAL BACKGROUND

### *Acoustic Vision and the Claimed Invention*

14. People with hearing loss have relied on hearing aids, which are small

[4] *See ActiveMap LLC v. Luxottica of America Inc.*, No. 2:26-cv-165-RWS, Dkt. 1 ¶ 7 (E.D. Tex. Feb. 27, 2026); *id.*, Dkt. 10 ¶ 7 (E.D. Tex. May 8, 2026).

electroacoustic devices worn in or behind the ear that amplify or modify the sounds around them. Each one works the same basic way. A microphone picks up incoming sound waves and converts them into electrical signals. An amplifier then strengthens or otherwise processes those signals, boosting some frequencies and reducing others. Finally, a speaker turns the processed signals back into sound and delivers it into the user's ear canal. '054 Pat. at 1:31–40.

15. That basic design, however, came with a built-in tradeoff. Driven by concerns about size, weight, and appearance, manufacturers worked to make hearing-aid microphones ever smaller. *Id.* at 1:46–50. But a smaller microphone intercepts less sound energy and must be more sensitive to compensate, and that sensitivity makes it harder for the device to separate the voice a listener wants to hear from the confusing, unwanted sounds surrounding the listener. *Id.* at 1:50–54. The problem was compounded by the close proximity of the speaker in the listener's ear to the hearing aid's microphone, which can produce disruptive feedback such as oscillation or whistling. *Id.* at 1:54–58. The result was a device that could make sounds louder but struggled to make the right sounds clearer.

16. What was needed was a hearing system that maximizes the desired acoustic input that comes to the listener from the space in front of the listener and minimizes the undesired acoustic input from other directions. *Id.* at 1:58–62. That is the problem that the inventor of the '054 Patent, Wendell McCracken, set out to solve.

17. Mr. McCracken conceived of what the '054 Patent calls "focused hearing": the enhancement of sounds in front of the listener while, at the same time, relatively suppressing sounds received from other directions. *Id.* at 3:41–46. His solution places horizontally displaced sound detectors on the front of eyewear or other headwear and uses a processing unit on the headwear to measure the difference in the times at which the same sound arrives at each detector.

*Id.* at 4:61–5:12, 5:41–50. Because that time differential corresponds to the angular displacement of the sound's source from the wearer's forward direction, the processor can determine whether a sound is coming from within a frontal zone, amplify those frontal sounds, and diminish sounds coming from outside that zone. *Id.*

18. Mr. McCracken, an experienced electrical engineer, knew the problem firsthand. He had invested thousands of dollars in conventional hearing aids, only to find that the background noise they picked up and amplified made it difficult to follow the conversations he wanted to hear. Mr. McCracken and his nephew, Dr. Elvin Fenton, a longtime Texarkana optometrist and Mr. McCracken's business partner, formed Acoustic Vision to solve that problem. Together, the two turned to an everyday object that already sits on the face and points wherever the wearer looks: a pair of eyeglasses.

19. Mr. McCracken recognized that eyewear offered something conventional hearing aids did not: a rigid frame that holds sound detectors on opposite sides of the wearer's face, a fixed distance apart, facing the same direction as the wearer's gaze. A sound coming from directly in front of the wearer reaches both detectors at the same instant, while a sound coming from the side strikes the nearer detector first. *Id.* at Abstract, claim 11, 4:61–5:13. Mr. McCracken realized this tiny difference in arrival time could be measured and used to determine the angle from which each sound arrives, so that sounds from within a frontal zone could be enhanced while sounds arriving from farther off-axis are suppressed—letting the wearer hear the person in front of him rather than the noise around him. *Id.* at 6:66-7:30. The '054 Patent also explains that the wearer can adjust the width of that frontal zone, for example narrowing it in a crowded restaurant. *Id.* at 6:47-51.

20. Dr. Fenton worked side by side with his uncle at Acoustic Vision to further develop the invention. Dr. Fenton spent more than two decades—approximately twenty-four years—in the

eyecare industry in Texarkana, Texas, where he operated an optometry practice and an optical laboratory. Acoustic Vision built and tested its hearing technology at this Texarkana laboratory. Drawing on his long experience with eyewear, Dr. Fenton worked with Mr. McCracken to develop and refine the concept, conducting experiments that explored how sound detectors and processing could be incorporated into ordinary eyeglasses worn every day.

21. The claims of the ’054 Patent are directed to specific arrangements of physical components—sound detectors positioned at defined locations on headwear and a processing unit positioned on the headwear—configured to perform particular signal processing that determines the direction from which each detected sound arrives and selectively amplifies or diminishes the corresponding sound signal. The claimed inventions improve the functioning of hearing devices by addressing the technical problem of conventional hearing aids’ inability to distinguish desired frontal sounds from unwanted surrounding sounds. ’054 Patent at 1:46–62.

22. Claim 11 recites headwear with a specific physical configuration—a first sound detector on a first frontal side of the headwear, a second sound detector on a second frontal side of the headwear, and a processing unit positioned on the headwear itself. That configuration uses the fixed spatial separation of the detectors on the wearer’s head to determine, from the difference in the arrival times of the same sound, that sound’s angular displacement from the wearer’s forward direction. The processing unit then amplifies sounds within, and diminishes sounds outside, a stored angular range before transmitting them to a speaker or hearing aid device. That arrangement ties the device’s acoustic focus to the direction the wearer is facing and changes how a hearing device captures and processes sound, so that the wearer hears the sounds in front of him while surrounding noise is suppressed. Claim 11 thus claims a concrete improvement to hearing-device technology, achieved through a particular arrangement of hardware on the headwear and a

particular way of processing the signals that hardware captures.

23. Nor were the claimed arrangements well-understood, routine, or conventional when the inventions of the ’054 Patent were made. As the ’054 Patent explains, conventional hearing aids relied on small, sensitive microphones worn in or behind the ear that could not distinguish sounds arriving from in front of the listener from unwanted surrounding sounds. ’054 Pat. at 1:46–62. Conventional hearing aids did not position spaced-apart sound detectors on the frontal sides of headwear, determine each sound’s angular displacement from the wearer’s forward direction based on its arrival times at those detectors, and selectively amplify or diminish each sound based on a stored angular displacement value, as claim 11 requires.

24. Acoustic Vision holds the exclusive right to enforce the ’054 Patent, including by filing this lawsuit, and to recover all damages for past, present, and future infringement and seek injunctive relief as appropriate under the law.

### *EssilorLuxottica and the Accused Products*

25. EssilorLuxottica is a global designer, manufacturer, and distributor of ophthalmic lenses, frames, sunglasses, eyecare equipment, and related products. The company was officially formed on October 2, 2018, following the combination of Luxottica Group S.p.A. and Essilor International. Its brands include Ray-Ban, Oakley, Essilor, and Varilux. EssilorLuxottica reports that it has more than 200,000 employees in 150 countries, operates approximately 600 operations facilities, and serves approximately 300,000 eye care professionals worldwide. For FY 2025, EssilorLuxottica reported consolidated revenue of €28.491 billion, including €12.787 billion in North America. As of December 31, 2025, EssilorLuxottica operated a global network of 17,750 retail stores, including 13,684 corporate stores—3,814 of which were in North America—and

4,066 franchised and licensed stores.[5]

26. In 2023, EssilorLuxottica expanded into the hearing solutions market by acquiring Israeli startup Nuance Hearing Ltd.[6] EssilorLuxottica now sells audio glasses in the United States under the brand "Nuance Audio," including at least the Nuance Audio Glasses and Nuance Audio Plus.[7] Luxottica of America imports, markets, distributes, offers for sale, and sells the Accused Products in the United States, including through the LensCrafters and Pearle Vision retail locations it operates in Texas and in this District, and through other retail channels such as Target Optical.[8]

27. The Nuance Audio Glasses and Nuance Audio Plus are collectively referred to as the "Accused Products."

28. The Accused Products are eyeglasses with integrated hearing-enhancement technology. Each Accused Product includes multiple microphones on the front of the frame, a processor on the frame that receives and processes the signals from those microphones, and speakers that deliver the processed sound to the wearer. Using what Luxottica describes as

---

[5] EssilorLuxottica, *Q4/FY 2025 Results* (Feb. 11, 2026), https://www.essilorluxottica.com/cap/content/283060/.

[6] EssilorLuxottica, *EssilorLuxottica to Expand into the Hearing Solutions Market* (July 25, 2023), https://www.essilorluxottica.com/en/newsroom/press-releases/essilorluxottica-to-expand-into-the-hearing-solutions-market/ (last visited Nov. 8, 2026).

[7] *See* EssilorLuxottica, *EssilorLuxottica Unveils Nuance Audio™ Plus, the Next Generation of Hearing Glasses* (Sept. 29, 2026), https://www.prnewswire.com/news-releases/essilorluxottica-unveils-nuance-audio-plus-the-next-generation-of-hearing-glasses-302891793.html (last visited November 9, 2026); *see also EssilorLuxottica Launches Nuance Audio Plus Hearing Glasses*, HearingTracker (Sept. 22, 2026), https://www.hearingtracker.com/news/essilorluxottica-launches-nuance-audio-plus-hearing-glasses (last visited Nov. 9, 2026).

[8] *See, e.g.*, Nuance Audio, *Terms & Conditions of Sale*, https://www.nuanceaudio.com/en-us/c/terms-of-sale (last visited Nov. 9, 2026) (governing purchases of Nuance Audio Glasses "from Luxottica of America Inc."); *Nuance Audio* Glasses Now Available in the United States, The Hearing Review (Apr. 8, 2025), https://hearingreview.com/hearing-products/hearing-aids/otc/nuance-audio-glasses-now-available-in-the-united-states (last visited Nov. 8, 2026) (Nuance Audio Glasses available at LensCrafters, Target Optical, and Pearle Vision).

"innovative beamforming algorithms" that "enable the listener to focus intuitively on desired sounds,"[9] the Accused Products amplify sounds arriving from the direction the wearer is facing and diminish sounds arriving from other directions. The Accused Products' infringement of the '054 Patent, including how each element of the asserted claim is met, is described in detail in the claim chart attached as Exhibit B and incorporated herein by reference.

***EssilorLuxottica Targets the U.S. Market***

29. EssilorLuxottica and its predecessors in interest targeted the United States market for their eyewear and hearing products. Essilor International opened its first U.S. factories in 1972.[10] About one decade later—in 1981—Luxottica Group S.p.A. acquired Avant-Garde Optics, a leading North American distributor, "marking its official entry into the United States."[11] Luxottica Group S.p.A. later expanded its U.S. retail footprint by acquiring Cole National, which includes Pearle Vision and the network of stores operating under Target Optical.[12] As of December 31, 2025, EssilorLuxottica operated 3,814 corporate retail stores in North America.[13] Today, North America is EssilorLuxottica's single largest geographic market, accounting for €12.787 billion—approximately 45%—of EssilorLuxottica's 2025 consolidated revenue.[14]

30. EssilorLuxottica targets the U.S. market for its products through subsidiaries under its common ownership and control. These include several companies: EssilorLuxottica USA Inc.,

---

[9] Nuance Audio Glasses: Scientific Evidence Report (Apr. 2025), at 6, https://media.nuanceaudio.com/cms/caas/v1/media/82200/data/351a01cb4795d0b06fc5491a933cbe8f/whitepaper.pdf (last visited November 9, 2026).

[10] EssilorLuxottica, History, https://www.essilorluxottica.com/en/group/history/ (last visited Nov. 11, 2026).

[11] *Id.*

[12] *Id.*

[13] EssilorLuxottica, *Q4/FY 2025 Results* (Feb. 11, 2026), https://www.essilorluxottica.com/cap/content/283060/.

[14] *Id.*

a Delaware corporation with its principal place of business at 1209 Orange Street, Wilmington, Delaware 19801, serves as a holding company for EssilorLuxottica's North American business activities; Luxottica U.S. Holdings Corp., a Delaware corporation with its principal place of business at 12 Harbor Park Drive, Port Washington, New York 11050, owns Defendant Luxottica of America; and Essilor of America, Inc., a Delaware corporation with its principal place of business at 13555 N. Stemmons Freeway, Dallas, Texas 75234. At EssilorLuxottica's direction and control, these subsidiaries (and the subsidiaries they control) import, market, distribute, offer for sale, and sell EssilorLuxottica's products in the United States.

31. Luxottica of America is EssilorLuxottica's principal U.S. retail operating subsidiary. Luxottica of America operates or owns eyewear retailers in the United States including LensCrafters, Pearle Vision, Target Optical, Sunglass Hut, and EyeMed Vision Care. Luxottica of America is also the seller of record for Nuance Audio Glasses purchased through EssilorLuxottica's U.S. Nuance Audio website. *See* ¶ 26, *supra*.

32. EssilorLuxottica first showcased its Nuance Audio glasses at the 2024 Consumer Electronics Show in Las Vegas.[15] Francesco Milleri, the company's Chairman and CEO, said, "[a]t CES, we will take our place among the world's leading innovators with a product, Nuance Audio, that has the potential to improve quality of life for over a billion people."[16]

33. EssilorLuxottica deliberately launched the Accused Products in the United States first. After obtaining clearance from the U.S. Food and Drug Administration in February 2025 to market the Nuance Audio Glasses as over-the-counter hearing aids, EssilorLuxottica began

[15] EssilorLuxottica, *EssilorLuxottica showcases its smart and hearing aided eyewear innovation with first appearance at CES 2024 in Las Vegas* (Jan. 9, 2024), https://www.essilorluxottica.com/en/newsroom/press-releases/ces-2024/.
[16] *Id.*

shipping them to U.S. retailers and officially launched them in the United States on April 8, 2025, at Rockefeller Center in New York City.[17] During the launch, one EssilorLuxottica representative explained that he was focused on "commercializing the product in the U.S. in both the vision industry as well as the audiology space."[18]

34. EssilorLuxottica distributes the Accused Products in the United States through established distribution channels. The Accused Products are sold through EssilorLuxottica's own U.S. retail network, including LensCrafters, Pearle Vision, Target Optical, and For Eyes stores nationwide; online through the Nuance Audio website; and through independent eye care professionals, national optical accounts, and audiology practices with which EssilorLuxottica has entered into distribution agreements. As EssilorLuxottica's head of Nuance Audio explained at the U.S. launch, "[f]or the first time in our history, we are distributing our product . . . not just in our retail network but also in independent optical and the audiological industry," and "we are signing agreements with the big companies there, as well as the small independents, now in the US. . . ."[19]

35. EssilorLuxottica and its U.S. subsidiaries share common ownership, management, brands, advertising platforms, distribution chains, and product lines, including the Accused Products. EssilorLuxottica (directly and/or through subsidiaries, affiliates, or intermediaries, including Luxottica of America) has imported, offered to sell, and sold the Accused Products in

---

[17] EssilorLuxottica, *EssilorLuxottica receives FDA clearance and EU certifications for Nuance Audio, making it available to consumers in the U.S. and Europe* (Feb. 3, 2025), https://www.essilorluxottica.com/en/newsroom/press-releases/fda-clearance-and-eu-certifications-for-nuance-audio/; *EssilorLuxottica Celebrates the Official U.S. Debut of Nuance Audio Glasses at Launch Party in NYC*, 20/20 (May 2025), https://www.2020mag.com/article/the-official-us-debut-of-nuance-audio-glasses-at-launch-party-in-nyc-ltm.

[18] *See* This Week in Hearing, *OTC Hearing Glasses Hit the U.S. Market: Inside the Nuance Audio Launch*, YOUTUBE (Apr. 22, 2025), https://www.youtube.com/watch?v=V6i_kIk2wwU.

[19] *Nuance Audio Glasses U.S. Launch: OTC Hearing Aids Hidden in Stylish Eyewear*, HEARINGTRACKER (Apr. 17, 2025), https://www.hearingtracker.com/news/nuance-audio-glasses-launched-in-us.

the United States through established distribution channels, and continues to do so, with the expectation and knowledge that they will be purchased by consumers in the United States, the State of Texas, and this District.

36. In the interest of providing detailed averments of infringement, Acoustic Vision has identified below at least one claim of the Asserted Patent to demonstrate infringement. However, the selection of claims should not be considered limiting, and Acoustic Vision will disclose additional claims in the Asserted Patent that Luxottica infringes in compliance with the Court's schedule.

## CAUSES OF ACTION

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 9,980,054

37. All preceding allegations are incorporated as if fully set forth herein.

38. Claim 11 of the '054 Patent recites:

11. Headwear comprising:

> a first sound detector positioned on a first frontal side of the headwear;
>
> a second sound detector positioned on a second frontal side of the headwear; and
>
> a processing unit positioned on the headwear, in communication with the first and second sound detectors, and storing software that includes instructions that when executed by the processing unit causes the processing unit to determine a time differential between detection of a sound by the first sound detector and detection of the same sound by the second sound detector, and from the time differential determine an angular displacement from a forward direction for each detected sound, amplify each sound signal corresponding to the detected sound for which the determined angular displacement is less than a stored angular displacement value, diminish each sound signal corresponding to the detected sound for which the determined angular displacement is greater than the stored angular displacement value, and transmit the amplified and diminished sound signals to a speaker or hearing aid device.

39. Luxottica has directly infringed and continues to directly infringe at least claim 11 of the ’054 Patent, literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a), by making, using, offering to sell, selling, and/or importing the Accused Products in the United States without authority. As set forth in the claim chart attached as Exhibit B, which is incorporated herein by reference, the Accused Products meet each and every limitation of at least claim 11 of the ’054 Patent.

40. As an example, and as shown in Exhibit B, each Accused Product is headwear comprising sound detectors (microphones) positioned on the first and second frontal sides of the headwear and a processing unit (a digital sound processor) positioned on the headwear and in communication with those sound detectors. The processing unit stores and executes software, including beamforming algorithms, that determines a time differential between detection of the same sound by different sound detectors, determines from that time differential an angular displacement from the wearer’s forward direction, amplifies sounds within a stored angular range in front of the wearer, diminishes sounds outside that range, and transmits the resulting sound signals to speakers in the eyewear. *See* Exhibit B.

41. Additionally, independently, and/or in the alternative, Luxottica directly infringes the ’054 Patent by selling and offering to sell the Accused Products in the United States through Nuance Audio’s U.S. website and various U.S. eyewear providers, including, but not limited to, LensCrafters, Target Optical, MyEyeDr., Walmart Vision Centers, and various optometry practices.

42. Additionally, independently, and/or in the alternative, Luxottica directly infringes the ’054 Patent through its own use of the Accused Products in the United States, including through testing, demonstrations, and customer support.

43. Additionally, and/or in the alternative, end users and other third parties—including purchasers of the Accused Products in the United States and in Texas—directly infringe the '054 Patent by using the Accused Products as Luxottica intends and instructs, including by wearing the Accused Products and using their directional hearing functionality.

44. Consequently, additionally and/or in the alternative to its direct infringement, Luxottica has induced and continues to induce infringement of the '054 Patent in violation of 35 U.S.C. § 271(b). Luxottica actively induces infringement by intentionally encouraging, instructing, and facilitating end users' use of the Accused Products in an infringing manner, including through instructions for use, product documentation, marketing materials, and educational videos that direct end users to use the Accused Products' directional hearing functionality as described in Exhibit B.

45. Additionally, independently, and/or in the alternative, EssilorLuxottica directly infringed the '054 Patent through its direct involvement in the activities of its subsidiaries, including Luxottica of America, including by selling and offering for sale the Accused Products directly to such subsidiaries and importing the Accused Products into the United States for such subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the '054 Patent under 35 U.S.C. § 271(a) by having offered for sale, sold, imported, and/or used those Accused Products. EssilorLuxottica offered for sale, sold, and imported the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, EssilorLuxottica is vicariously liable for this infringing conduct of its U.S.-based subsidiaries, *e.g.*, Luxottica of America (under both the alter ego and agency theories) because, as an example, EssilorLuxottica and its subsidiaries are essentially the same company, and EssilorLuxottica has the right and ability to control its subsidiaries' infringing acts and receives

a direct financial benefit from the infringement of its U.S.-based subsidiaries, *e.g.*, Luxottica of America.

46. Years before EssilorLuxottica acquired Nuance Hearing, Acoustic Vision disclosed its later-patented, eyewear-based stereophonic hearing technology directly to EssilorLuxottica's subsidiaries and predecessors in interest—Essilor of America, Inc. and Shamir Insight, Inc.

47. In or around September 2016, Acoustic Vision disclosed its patent-pending eyewear-based stereophonic hearing technology to Essilor of America, Inc. During those discussions, Acoustic Vision explained that it had issued and pending patents covering its eyewear technology.

48. In or around January 2017, Acoustic Vision disclosed its patent-pending eyewear-based stereophonic hearing technology to Shamir Insight, Inc. Prior to these discussions, Essilor International, S.A. acquired 50% of Shamir Optical Industry Ltd., the parent company of Shamir Insight, Inc., in July 2011.[20] EssilorLuxottica acquired the remaining 50% of Shamir Optical in August 2022.[21] During those discussions, Acoustic Vision explained that it had issued and pending patents covering its eyewear technology.

49. Through these disclosures, Essilor of America, Inc. and Shamir Insight, Inc. learned of Acoustic Vision's eyewear-based stereophonic hearing technology and Acoustic Vision's efforts to obtain patent protection for it. Essilor of America, Inc. and Shamir Insight, Inc.—and EssilorLuxottica, as their successor and parent company—knew of Acoustic Vision's pending

[20] *Kibbutz Shamir and Essilor Announce the Completion of the Acquisition of 50% of Shamir Optical by Essilor*, PR NEWSWIRE (July 1, 2011), https://www.prnewswire.com/news-releases/kibbutz-shamir-and-essilor-announce-the-completion-of-the-acquisition-of-50-of-shamir-optical-by-essilor-124836454.html.

[21] *EssilorLuxottica Acquires 100% of Shamir Optics*, OPTIK NOW (Aug. 3, 2022), https://www.optiknow.ca/2022/08/03/reports-essilorluxottica-acquires-100-of-shamir-optics/.

patent rights in eyewear-based stereophonic hearing technology and therefore knew or should have known that the ’054 Patent would issue to protect that technology. Despite EssilorLuxottica’s knowledge of the ’054 Patent—or, alternatively, its willful blindness of that knowledge—EssilorLuxottica entered the hearing-glasses market with the Accused Products without seeking a license.

50. EssilorLuxottica and Luxottica of America coordinate in the development, regulatory clearance, marketing, and sale of the Accused Products in the United States, such that knowledge of the ’054 Patent was shared with, or is imputed to, EssilorLuxottica and Luxottica of America. In the alternative, Luxottica deliberately avoided confirming the ’054 Patent’s relevance to the Accused Products despite Acoustic Vision’s discussions with Essilor of America, Inc. and Shamir Insight, Inc. and was therefore willfully blind to the ’054 Patent. Based on Luxottica’s knowledge or willful blindness of the ’054 Patent and its contemporaneous launch of the Accused Products in the United States, Luxottica knew—or, alternatively, was willfully blind—of its infringement of the Asserted Patent.

51. Additionally, Luxottica has had knowledge of the ’054 Patent since at least December 26, 2023, and in no event later than the filing and service of this Complaint. Nuance Hearing Ltd. (“Nuance Hearing”)—the Israeli hearing-technology company that EssilorLuxottica acquired and whose technology is incorporated in the Accused Products—has repeatedly identified the ’054 Patent to the USPTO while prosecuting its own hearing-aid patent applications.

52. Specifically, Nuance Hearing cited the ’054 Patent (identified as U.S. Patent No. 9,980,054, issued May 22, 2018, to McCracken) in Information Disclosure Statements submitted in at least three of its U.S. patent applications: Application No. 18/491,847 (now U.S. Patent No. 12,452,611, “Feedback Cancellation in a Hearing Aid Device Using Tap Coherence Values”);

Application No. 18/476,369 (now U.S. Patent No. 12,464,296, "Hearing Aid with Own-Voice Mitigation"); and Application No. 18/741,861 (now U.S. Patent No. 12,658,870, "Howl Detection in an Audio System").[22] Nuance Hearing is the named applicant on each application. Application No. 18/476,369, for example, is directed to a hearing assistance device integrated into a spectacle frame with microphones mounted on the front piece of the frame—the same form factor as the Accused Products. By citing the '054 Patent to the USPTO under its duty of candor, Nuance Hearing, its inventors, and its patent counsel necessarily knew of the '054 Patent.

53. Nuance Hearing's knowledge of the '054 Patent is attributable to Luxottica. In 2023, EssilorLuxottica acquired Nuance Hearing, including its hearing technology, personnel, and patent portfolio.[23] Each of the three applications in which the '054 Patent was cited was filed after EssilorLuxottica announced that acquisition, and EssilorLuxottica used Nuance Hearing's technology and personnel to develop, launch, and commercialize the Accused Products. The inventors, personnel, and patent counsel who cited the '054 Patent to the USPTO did so on behalf of, and for the benefit of, EssilorLuxottica, which owned and controlled the acquired Nuance Hearing technology and patent portfolio.

54. EssilorLuxottica and Luxottica of America coordinate in the development, regulatory clearance, marketing, and sale of the Accused Products in the United States, such that

---

[22] *See* File History of U.S. Patent No. 12,452,611, Information Disclosure Statement (received Dec. 26, 2023), U.S. Patents Cite No. 18; File History of U.S. Patent No. 12,464,296, Information Disclosure Statement, U.S. Patents Cite No. 18; File History of U.S. Patent No. 12,658,870, Information Disclosure Statement, U.S. Patents Cite No. 18.

[23] *See* EssilorLuxottica, *EssilorLuxottica to expand into the hearing solutions market with* a *new disruptive technology at the intersection of sight and sound* (July 25, 2023), https://www.essilorluxottica.com/en/newsroom/press-releases/essilorluxottica-to-expand-into-the-hearing-solutions-market/ (announcing acquisition of Nuance Hearing); Application No. 18/476,369 (filed Sept. 28, 2023); Application No. 18/491,847 (filed Oct. 23, 2023); Application No. 18/741,861 (filed June 13, 2024).

knowledge of the ’054 Patent was shared with, or is imputed to, EssilorLuxottica and Luxottica of America. In the alternative, Luxottica deliberately avoided confirming the ’054 Patent’s relevance to the Accused Products despite its repeated citation in the Nuance Hearing applications and was therefore willfully blind to the ’054 Patent. Based on Luxottica’s knowledge or willful blindness of the ’054 Patent and its contemporaneous launch of the Accused Products in the United States, Luxottica knew—or, alternatively, was willfully blind—of its infringement of the Asserted Patent.

55. Luxottica knew that its customers’ use of the Accused Products would constitute infringement of the ’054 Patent or was willfully blind to such infringement. Luxottica knew that the Accused Products are specifically designed to operate in the manner claimed in the ’054 Patent.

56. Luxottica specifically intended to induce infringement of the ’054 Patent. Luxottica provides its customers with instructions for use, product documentation, marketing materials, and educational videos that direct them to use the Accused Products in an infringing manner,[24] and the Accused Products are designed so that the infringing directional hearing functionality operates when the products are used as directed.

57. Luxottica’s direct and induced infringement have been without license from Acoustic Vision, and Luxottica’s acts have damaged Acoustic Vision. Acoustic Vision is entitled to recover the damages it has sustained as a result of Luxottica’s wrongful acts in an amount subject to proof at trial.

[24] *See, e.g.*, Nuance Audio, *Instruction for Use Safety & Warranty (Nuance Audio Glasses)*, https://media.nuanceaudio.com/cms/caas/v1/media/81844/data/211500d0565e4a4ead319c7efaa9f959/glassesrev10.pdf?_gl=1*11132dp*_gcl_aw*R0NMLjE3OTQ4NjIxNDcuQ2owS0NRaUE4T3JYQmhERUFSSXNBRUN0bHg3cnh3dEpLRV9RSW5TMmdLTzZtN3NiSmUzOGFOUm9YMlpvOC0yZTRtN3JUMTZjWC1BYUJtSWFBZ250RUFMd193Y0I.*_gcl_dc*R0NMLjE3OTQ4NjIxNDcuQ2owS0NRaUE4T3JYQmhERUFSSXNBRUN0bHg3cnh3dEpLRV9RSW5TMmdLTzZtN3NiSmUzOGFOUm9YMlpvOC0yZTRtN3JUMTZjWC1BYUJtSWFBZ250RUFMd193Y0I.*_gcl_au*MTMyNzY5MDczNy4xNzkwOTczMDQw (last visited Nov. 16, 2026).

58. Luxottica's direct and induced infringement of Acoustic Vision's '054 Patent have been willful at least as of the date Luxottica learned of the '054 Patent, as alleged above.

## JURY DEMAND

59. Acoustic Vision hereby demands a trial by jury on all issues.

## PRAYER

Wherefore, Acoustic Vision prays for entry of judgment as follows:

60. A judgment in favor of Acoustic Vision that Luxottica has infringed and is infringing the '054 Patent, directly and/or indirectly, either literally and/or under the doctrine of equivalents;

61. A judgment in favor of Acoustic Vision that Luxottica's infringement of the '054 Patent is willful and continues to be willful;

62. An award of damages in favor of Acoustic Vision adequate to compensate Acoustic Vision for Luxottica's infringement of the '054 Patent which shall in no event be less than a reasonable royalty, together with interest and costs as fixed by the court pursuant to 35 U.S.C. § 284;

63. An award of enhanced damages in favor of Acoustic Vision against Luxottica for up to three times the award of actual damages for Luxottica's willful infringement of the '054 Patent pursuant to 35 U.S.C. § 284;

64. A permanent injunction in favor of Acoustic Vision against Luxottica enjoining Luxottica, its officers, agents, employees, and others acting in privity, from further infringement of the '054 Patent;

65. An award of an ongoing royalty for Luxottica's post-judgment infringement in the event a permanent injunction is not granted;

66. An award of attorneys' fees pursuant to 35 U.S.C. § 285 or as otherwise permitted by law in an amount deemed just and appropriate by the Court;

67. An award of costs and expenses as deemed appropriate by the Court; and

68. Any other legal or equitable relief to which Acoustic Vision is justly entitled.

Dated: November 19, 2026

Respectfully submitted,

*/s/ Warren J. McCarty, III*
Warren J. McCarty, III
State Bar No.: 24107857
Ariane Mann
State Bar No.: 24140399
Sean Keller
State Bar No.: 24124532
**AHMAD, ZAVITSANOS & MENSING, PLLC**
2001 Ross Ave, Suite 520
Dallas, TX 75201
(214) 800-4501
wmccarty@azalaw.com
amann@azalaw.com
skeller@azalaw.com

**COUNSEL FOR PLAINTIFF**